# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**VANOIL COMPLETION SYSTEMS LLC**      **CASE NO. 6:18-CV-00412**

**VERSUS**                     **JUDGE ROBERT R. SUMMERHAYS**

**US PTC INC**                   **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Currently pending is a motion to dismiss [Rec. Doc. 9], pursuant to Federal Rule of Civil Procedure 12(b)(2), filed by the sole defendant herein, PTC do Brasil Tecnologia Petroleo LTDA ("PTC Brasil").[1] The plaintiff, Vanoil Completion Systems, LLC ("Vanoil"), filed an opposition [Rec. Doc. 11], to which PTC Brasil replied [Rec. Doc. 20]. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Oral argument was held on September 20, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be DENIED, as

---

[1] In its notice of removal, PTC Brasil represented that the previously named and herein captioned defendant, US PTC, Inc. d/b/a Petroleum Technology Co., was "the wrong defendant," and was therefore dismissed without prejudice from the state court action, prior to the case being removed to federal court. Rec. Doc. 1, pp. 1-2, ¶¶ 2, 4. Accordingly, this docket was amended to note that US PTC, Inc. was never a named party post-removal, such that US PTC, Inc. has been terminated from the instant action, and PTC Brasil is the sole defendant herein.

the undersigned finds that Vanoil has made a prima facie showing of specific personal jurisdiction.

**BACKGROUND**[2]

This litigation arises out of a petition on open account, originally filed in Louisiana's 15th Judicial District Court, in Lafayette Parish, alleging that PTC Brasil is indebted unto Vanoil in the amount of $1,071,248.02.[3]

Vanoil is a Louisiana limited liability company, domiciled in Broussard, Louisiana, whose primary business operations include the manufacturing and selling of gas lift mandrels ("mandrels"), which are specialized pieces of equipment necessary for gaslift operations in the oilfield industry.[4] Vanoil's managing member, Christopher J. Mayo, is also a resident and domiciliary of Louisiana.[5] PTC Brasil is a Brazilian limited liability company, with its principal place of business in Brazil, whose primary business operations include oilfield services in the gas lift and

---

[2] "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985))). "When jurisdictional facts are disputed, all factual conflicts are resolved in favor of the party seeking to invoke the court's jurisdiction." *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). Thus, at this stage, the court accepts as true the facts alleged in the complaint, as supported by depositions, affidavits or exhibits. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625-26 (5th Cir. 1999).

[3] Rec. Doc. 1-1.

[4] Rec. Doc. 11-1, p. 1, ¶¶ 2, 4.

[5] Rec. Doc. 1, p. 3, ¶ 9; Rec. Doc. 11-1, p. 1, ¶ 2.

chemical injection market.[6] The owner members of PTC Brasil are its regional manager, Roberto Nogueira (0.001% owner), a resident, domiciliary and citizen of Brazil, and Petroleum Technology Company AS ("PTC AS") (99.999% owner), a limited company formed in Norway, with its principal place of business in Stavanger, Norway.[7] Accordingly, PTC Brasil removed the action to this court on the basis of diversity jurisdiction.

In its complaint, captioned a first amended and restated petition on open account, Vanoil alleges that, between March and June, 2016, PTC Brasil issued several purchase orders requesting that Vanoil construct and manufacture mandrels, some of which were specialty items.[8] Attached to the complaint are statements, invoices, and supporting documents, which purport to evidence the referenced purchase orders.[9] Upon receipt of the purchase orders, Vanoil alleges that it constructed and manufactured the mandrels and related equipment, which were then retrieved by PTC Brasil, through its selected carriers/agents, from Vanoil's office in Broussard, Louisiana, on April 6, April 21, and May 10, 2016.[10] Vanoil concedes that PTC Brasil made partial payments on the account and also returned some of the mandrels; however, the remaining balance is alleged to be $1,071,248.02.[11]

---

[6] Rec. Doc. 9-3, p. 1, ¶¶ 2, 3.
[7] Rec. Doc. 1, pp. 3-4, ¶ 10; Rec. Doc. 5.
[8] Rec. Doc. 1-1, p. 34, ¶ 4.
[9] Rec. Doc. 1-1, pp. 5-30, and p. 34, ¶ 3.
[10] Rec. Doc. 1-1, p. 34, ¶ 5.
[11] Rec. Doc. 1-1, p. 34, ¶ 6.

Vanoil's complaint breaks down the allegedly outstanding amount as follows: $538,378.02 relates to mandrels sold to PTC Brasil and retrieved by its agents/carriers during April and May of 2016; $4,000.00 relates to customs and late fee charges incurred by Vanoil because PTC Brasil "failed to return certain mandrels to [Vanoil] in Broussard, Louisiana[;]" and $528,870.00 relates to purchase orders submitted by PTC Brasil, for nineteen (19) specialty item mandrels, but subsequently cancelled after Vanoil accepted the purchase orders and undertook the expense of constructing same.[12] Vanoil alleges that PTC Brasil has refused to pay the outstanding amount, despite amicable demand for same, and it now seeks the full amount, including judicial interest from the date of judicial demand until paid, in addition to costs and fees.[13]

In the instant motion to dismiss, PTC Brasil seeks dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. PTC Brasil asserts that it lacks the necessary "minimum contacts" to support a finding of general or specific personal jurisdiction, and furthermore, even if Vanoil could establish that jurisdiction exists, the exercise thereof would offend traditional notions of fair play and substantial justice. In support of its motion to dismiss, PTC Brasil attached a sworn declaration of its regional manager, Mr. Nogueira, and a

---

[12] Rec. Doc. 1-1, pp. 34-35, ¶¶ 7-10.
[13] Rec. Doc. 1-1, pp. 35-36, ¶¶ 11, 12.

Non-Disclosure Agreement ("NDA"), executed by Vanoil and PTC Brasil, on December 9, 2015.[14]

In addition to identifying PTC Brasil as a Brazilian LLC, with its principal place of business in Brazil, Mr. Nogueira's sworn declaration sets forth the following facts, in pertinent part.[15] PTC Brasil does not maintain a place of business or address in Louisiana; is not licensed or authorized to do, and does not conduct, business in Louisiana; has no registered agent for service of process in Louisiana; does not own or lease any property in Louisiana; does not have any employees in, or who are residents or domiciliaries of, Louisiana; does not hold any Louisiana licenses or permits; and does not maintain a bank account in Louisiana. The purchase orders at issue in this lawsuit were issued by PTC Brasil, from Brazil for shipment to Brazil, with shipping costs paid by PTC Brasil.

Prior to the issuance of these purchase orders,[16] the parties, as represented by the signatures of Mr. Nogueira and Mr. Mayo, entered into the December 9, 2015, NDA, attached to the motion to dismiss. The NDA was signed in connection with Vanoil's sale of mandrels to PTC Brasil and the parties' "desire to exchange

---

[14] Rec. Doc. 9-3 (sworn declaration of Roberto G. Nogueira); Rec. Doc. 9-4 (non-disclosure agreement).
[15] *See generally* Rec. Doc. 9-3, pp. 1-4.
[16] In his declaration, Mr. Nogueira states that "Vanoil had supplied similar mandrels to PTC Brasil in the past that failed on a subsea well location in Brazilian waters." Rec. Doc. 9-3, p. 3, ¶ 21.

information related to products and the sale of the Products and Services[.]"[17] The NDA provides that it "shall be governed by and construed in accordance with Brazilian law, with the [sic] Rio de Janeiro as legal venue."[18] PTC Brasil represents that there is no master services agreement between these parties.[19] Furthermore, there was never an exclusive, nor is there an ongoing, relationship between these parties.[20]

After signing the NDA, PTC Brasil's representative Tage Thorkildsen traveled to Broussard, Louisiana, on January 18-19, 2016, to conduct a compliance audit of Vanoil's facilities.[21] Thereafter, PTC Brasil issued the purchase orders at issue herein. Some of the mandrels were intended for a customer of PTC Brasil, while others were placed in PTC Brasil's stock; however, all of the mandrels were delivered to, and inspected in, Rio de Janeiro, Brazil.[22] PTC Brasil represents that deficiencies or defects, allegedly similar to ones found in mandrels previously purchased by PTC Brasil from Vanoil, were detected, which led to PTC Brasil undertaking significant expense to remediate the issues.[23] Ultimately, PTC Brasil's intended customer rejected some of the remediated mandrels, which were then

---

[17] Rec. Doc. 9-4, p. 1.
[18] *Id.* at p. 5.
[19] Rec. Doc. 9-3, p. 4, ¶ 32.
[20] *Id.* at ¶¶ 31, 33.
[21] Rec. Doc. 9-3, p. 2, ¶ 19; Rec. Doc. 11-1, p. 3, ¶ 16.
[22] Rec. Doc. 9-3, p. 3, ¶¶ 21-23.
[23] Rec. Doc. 9-3, p. 3, ¶¶ 24-26.

returned to Vanoil.[24] PTC Brasil's customer then refused to accept any further mandrels from Vanoil, at which time PTC Brasil alleges that it suffered a loss of revenue due to both its inability to find other buyers for the mandrels, as well as a suspension of business until PTC Brasil could find a new supplier of mandrels.[25]

In opposition to the motion to dismiss, Vanoil argues that PTC Brasil's "numerous and substantial" contacts with Louisiana arise directly out of its ordering and purchasing of mandrels and equipment from Vanoil, on open account, and that, on information and belief, PTC Brasil has also purchased from and/or visited at least three other oil and gas manufacturers or merchants in south Louisiana.[26] Vanoil also emphasizes its position as one of roughly four manufacturers of gas lift mandrels in the world, such that it has not and does not pursue customers; rather, customers generally seek out Vanoil's services in order to commence gas lift operations.[27]

Vanoil relies heavily on its relationship with PTC Brasil's parent company and 99.999% owner, PTC AS, which dates back to 2008, prior to the 2012 formation of PTC Brasil.[28] On May 24, 2012, Vanoil and PTC AS, as represented by the signatures of Mr. Mayo and a senior executive of PTC AS, Magnar Tveiten, executed a Confidentiality Agreement ("CA"), which contemplates the parties'

---

[24] Rec. Doc. 9-3, p. 3, ¶ 27.
[25] Rec. Doc. 9-3, p. 3, ¶¶ 28, 29.
[26] Rec. Doc. 11-1, pp. 4-5, ¶¶ 25-28.
[27] Rec. Doc. 11, p. 6.
[28] Rec. Doc. 11, pp. 5-10; Rec. Doc. 11-1, pp. 2-3, ¶¶ 6-15.

desire "to enter into discussions . . . to evaluate and determine their interest in a further business arrangement," relating to mandrels or equipment designed and manufactured by Vanoil.[29] The CA provides that it "is governed by the laws of the State of Louisiana," and that the parties consent to the venue, subject matter, and personal jurisdiction in "the United States District Court for the Western District of Louisiana, Lafayette Division and/or the 15th Judicial District Court in and for the Parish of Lafayette, Louisiana[.]"[30] Vanoil notes that the CA defines "affiliates" of PTC AS to include "any company which is a subsidiary," such that PTC Brasil is included in the CA; however, as noted by PTC Brasil, the CA also provides that confidential information may only be disclosed to an affiliate after the disclosing party "obtain[s] an undertaking of confidentiality in the same form and content [the CA] . . . ."[31]

In addition to the CA, attached to Vanoil's opposition to the instant motion is a sworn declaration of Mr. Mayo, which sets forth the following facts, in pertinent part.[32] PTC AS first sent a representative to Vanoil's Broussard, Louisiana office in 2008, and again in 2009, in order to discuss a business relationship between the

_____

[29] Rec. Doc. 11-1, pp. 1-5. As recognized in footnote 33, *infra*, although PTC Brasil is not a direct signatory on the CA, it does appear from the briefing that the CA was signed *after* PTC Brasil was formed, which bolsters Vanoil's position that PTC Brasil was included as a known and existing affiliate at the time of the signing, to include the jurisdictional consent.
[30] Rec. Doc. 11-2, p. 4, ¶¶ 13, 14.
[31] Rec. Doc. 11-2, pp. 1 (defining affiliates) and 2, ¶ 3 (providing for disclosure thereto).
[32] *See generally* Rec. Doc. 11-1, pp. 1-5.

companies. In 2010, PTC AS again sent representatives, along with Mr. Nogueira on behalf of PTC Brasil, to Vanoil's office in Louisiana, to discuss and/or negotiate the purchase of gas lift mandrels for anticipated operations in Brazil.[33] As part of these discussions, Vanoil and PTC AS representatives agreed upon payment terms, which would include an extended 120-day invoicing period, to allow some leeway for the new Brazil operations once they commenced. Thereafter, the CA was signed in May 2012, and PTC Brasil's operations commenced.

For approximately eleven months thereafter, PTC Brasil owed Vanoil $750,000.00, a balance on which Vanoil did not attempt to collect, as a professional courtesy given PTC Brasil's status as a startup. Mr. Mayo states that, in total over the course of their relationship, Vanoil issued at least 88 invoices to PTC Brasil, amounting to over $6.6 million in products sold, payment for which was to be made through Vanoil's bank, in Louisiana.[34] All equipment sold by Vanoil, to PTC Brasil as well as all other clients, is designated "ex-works," by the International Chamber of Commerce, meaning that Vanoil bears a minimal risk of loss relative to the product it sells, by fulfilling its obligation to deliver goods sold when the goods are

---

[33] It is unclear exactly when PTC Brasil was formed. Vanoil states that PTC Brasil's operations did not commence until 2012, while PTC Brasil's reply brief states that Mr. Nogueira's 2010 visit to Vanoil's facilities was "around the time PTC Brasil was formed." *Compare* Rec. Doc. 11-1, p. 3, ¶ 12, *with* Rec. Doc. 20, p. 3. Later, in reply brief, PTC Brasil concedes that the 2010 visit was "after PTC Brasil was formed[.]" Rec. Doc. 20, p. 3.

[34] Rec. Doc. 11-1, p. 3, ¶ 13, and p. 4, ¶ 24.

made available to the buyer (PTC Brasil) at the seller's (Vanoil's) premises.[35] As such, all products sold by Vanoil to PTC Brasil were made available for pickup, transport, and export, by PTC Brasil and/or its agent or representative, at Vanoil's facilities in Broussard, Louisiana.[36] Further, in the event any product required return, it was to be returned to Vanoil's facilities in Broussard, Louisiana; however, the amended complaint alleges that PTC Brasil did not comply with this term.[37]

## LAW AND ANALYSIS

### I.   THE STANDARD FOR RESOLVING A RULE 12(B)(2) MOTION TO DISMISS

Personal jurisdiction "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"[38] When a nonresident defendant moves for dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists.[39] "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, however, the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor."[40]

---

[35] Rec. Doc. 11-1, pp. 3-4, ¶¶ 18, 19.

[36] Rec. Doc. 11-1, p. 4, ¶¶ 20-22.

[37] Rec. Doc. 11-1, p. 4, ¶ 23; Rec. Doc. 1-1, pp. 34-35, ¶ 8.

[38] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (quoting *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).

[39] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[40] *Guidry*, 188 F.3d at 625 (citations omitted).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment.[41] Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, these two steps conflate, such that the court's sole focus is whether the exercise of jurisdiction in this case satisfies federal due process requirements.[42]

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[43] "To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state."[44]

---

[41] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[42] *Latshaw*, 167 F.3d at 211; *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

[43] *Latshaw*, 167 F.3d at 211 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)); *see also Felch v. Transportes Lar-Mex SA DE CV,* 92 F.3d 320, 323 (5th Cir. 1996).

[44] *Latshaw*, 167 F.3d at 211 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction.[45] "The 'minimum contacts' prong, for specific personal jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.'"[46] "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."[47] "When the cause of action relates to the defendant's contact with the forum, the 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff."[48]

"General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both 'continuous and

---

[45] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

[46] *Preis Kraft & Roy v. Dallas Fire Ins. Co.*, No. 05-953, 2006 WL 1793649, at *2 (W.D. La. June 15, 2006) (Hill, M.J.) (quoting *D.J. Investments*, 754 F.2d 542, 545 n.1 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted); *Anderson v. GlobalSantaFe Offshore Servs., Inc.*, 924 F. Supp. 2d 738, 742-43 (E.D. La. 2013).

[47] *Felch*, 92 F.3d at 324 (quoting *Wilson*, 20 F.3d at 647).

[48] *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 297-98); *see also Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

systematic.'"[49] The contacts must be "extensive" to satisfy the "continuous and systematic" test, such that the nonresident defendant's affiliations with the forum state render it essentially at home in the forum state.[50] This is a difficult test to meet.[51] "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ."[52] "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction."[53]

"Once the plaintiff has made out a *prima facie* showing under the first prong, the burden shifts to the defendant to show, under the second prong of the constitutional due process inquiry, that the exercise of jurisdiction would not comply with 'fair play' and 'substantial justice.'"[54] The Fifth Circuit considers the following factors in the fairness analysis:

> [(1) t]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.[55]

---

[49] *Felch*, 92 F.3d at 324 (quoting *Wilson*, 20 F.3d at 647); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

[50] *Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001); *Goodyear Dunlop*, 564 U.S. at 919.

[51] *Johnston*, 523 F.3d at 609 (citing *Submersible Sys.,* 249 F.3d at 419).

[52] *Id*. at 609-10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted)).

[53] *Id*. at 610 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citation omitted)).

[54] *Freudensprung v. Offshore Tech. Servs., Inc*., 379 F.3d 327, 343 (5th Cir. 2004); *see also International Shoe*, 326 U.S. at 316.

[55] *Electrosource*, 176 F.3d at 874 (quoting *Wilson*, 20 F.3d at 647 n. 3 (internal citations and quotation marks omitted)).

"[I]t is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[56]

## II.    PTC BRASIL IS A DISTINCT LEGAL ENTITY FROM PTC AS

As a threshold matter, the undersigned must determine whether the actions taken on behalf of PTC AS, as they relate to business dealings with Vanoil in Louisiana, may be directly attributed to PTC Brasil, the sole defendant herein. In its reply brief, PTC Brasil challenges Vanoil's conflation of the two legal entities, arguing that PTC AS and PTC Brasil are distinct, foreign limited liability companies; that PTC Brasil was formed eight years after PTC AS; and that Vanoil acknowledged that it had incorrectly named PTC AS in its initial state court complaint and therefore dismissed PTC AS from this lawsuit prior to removal to federal court.[57]

Although PTC AS clearly has a controlling interest (99.999%) in PTC Brasil, "typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other."[58] "Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes."[59] Aside

---

[56] *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

[57] The originally named, and later dismissed, defendant was actually "US PTC, Inc., d/b/a Petroleum Technology Company[;]" however, a review of the parties' briefs indicates that that entity is one and the same as PTC AS referenced herein. *See* Rec. Doc. 1-1, p. 38.

[58] *Access Telecom*, 197 F.3d at 717.

[59] *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).

from PTC AS's controlling interest in PTC Brasil, the record does not reflect whether there is a commonalilty of officers and directors; whether the two entities observe corporate formalities and maintain separate accounting systems; whether PTC AS exercises complete authority over PTC Brasil's general policy; or whether PTC Brasil exercises complete authority over its own daily operations.[60] Rather, the record indicates that PTC Brasil's principal place of business is in Brazil, while that of PTC AS is in Norway. Further, different representatives have appeared, and executed agreements, on behalf of the two entities in their business dealings with Vanoil. Given that the Fifth Circuit has acknowledged that "the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent," the undersigned finds the reverse to also be true, such that Vanoil has failed to show that PTC AS's contacts should be imputed to PTC Brasil for jurisdictional purposes.[61] Although the undersigned declines to "fuse" the two entities for jurisdictional purposes, the facts of this case nonetheless support some consideration thereof.

While the contacts between PTC AS and the forum state may not form the sole basis upon which jurisdiction over PTC Brasil is based, they may nonetheless be considered, given PTC AS's undisputed controlling interest, as well as its role in

---

[60] *See Hargrave*, 710 F.2d at 1159-61.
[61] *Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011).

initiating the relationship between PTC Brasil and Vanoil.[62] For instance, the undersigned finds material the fact that the relationship between these parties stems directly from contacts made by PTC AS's representatives initially approaching Vanoil, in Louisiana, in 2008.[63] Thereafter, representatives of PTC AS visited Vanoil in 2009, and again in 2010, accompanied by representatives of PTC Brasil, including at least Mr. Nogueira. Further, PTC Brasil represents that this 2010 meeting took place "after PTC Brasil was formed," such that not only did Mr. Nogueira travel to Vanoil's facilities after PTC Brasil's formation, but PTC Brasil was also already in existence at the time that PTC AS and Vanoil executed the above-discussed CA, in May 2012, which arguably includes PTC Brasil as an "affiliate" of PTC AS.[64] That CA contains a forum selection clause, in which the parties consented to the venue, subject matter, and personal jurisdiction of, *inter alia*, this Court. Although this dispute does not arise directly from the CA, and therefore it cannot serve as a basis for specific jurisdiction, the undersigned notes that PTC Brasil's 99.999% owner and parent company PTC AS did, at one time, agree to be haled into court in Louisiana.[65]

---

[62] *Freudensprung*, 379 F.3d at 346 (In the Fifth Circuit, "[a]s a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.").

[63] *See* Rec. Doc. 11-1, pp. 1-2, ¶¶ 5-9.

[64] *See* footnotes 29 and 31, *supra*.

[65] As discussed during oral argument, the undersigned further notes that the 2015 NDA contains only a venue clause, denoting Brazil, but that this dispute also does not arise out of the NDA.

Accordingly, these facts have been considered and weighed for purposes of the analysis herein.

### III.    THIS COURT LACKS GENERAL JURISDICTION OVER PTC BRASIL

As indicated above, "[t]he 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"[66] Following the Fifth Circuit's guidance in *Johnston*, prior to analyzing the facts of the instant case, it is helpful to review two Supreme Court cases to demonstrate how difficult it is to establish general jurisdiction.

In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), "the Supreme Court upheld the district court's exercise of general personal jurisdiction in Ohio over a Philippine corporation whose president and general manager relocated to Ohio during the Japanese occupation of the Philippine Islands."[67] "While in Ohio, the president maintained a corporate office where he kept the records of the corporation, conducted director's meetings, and made all key business decisions."[68] "The corporation also distributed salary checks drawn on two Ohio bank accounts and engaged an Ohio bank to act as a transfer agent."[69] On the basis of those activities, the Supreme Court "held that Ohio could exercise jurisdiction

---

[66] *Johnston*, 523 F.3d at 609 (citing *Submersible Sys.,* 249 F.3d at 419).
[67] *Johnston*, 523 F.3d at 610 (citing *Perkins*, 342 U.S. at 447-49).
[68] *Id.* (citing *Perkins*, 342 U.S. at 447-48).
[69] *Id.* (citing *Perkins*, 342 U.S. at 448).

over the corporation because the president had 'carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company.'"[70]

In contrast, in *Helicopteros*, the Supreme Court found that the Colombian defendant's somewhat extensive contacts with Texas were nevertheless insufficient to support an exercise of general jurisdiction.[71] There, "over a six year period the defendant: purchased helicopters (approximately 80% of its fleet), spare parts, and accessories for more than $4 million from a Texas company; sent its prospective pilots to Texas for training; sent management and maintenance personnel to Texas for technical consultations; and received a check for over $5 million that was drawn upon a Texas bank."[72] "Nevertheless, the [Supreme] Court held that none of the contacts was substantial enough standing alone or taken together."[73]

As recognized in *Johnston*, the Fifth Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues."[74]

---

[70] *Id.*

[71] *Johnston*, 523 F.3d at 610 (citing *Helicopteros*, 466 U.S. at 418-19).

[72] *Id.* (citing *Helicopteros*, 466 U.S. at 411).

[73] *Id.* (citing *Helicopteros*, 466 U.S. at 416-19).

[74] 523 F.3d at 611 (citing, *e.g.*, *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding no general jurisdiction even though the defendant routinely arranged and received interline shipments to and from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and service national accounts); *Wilson*, 20 F.3d at 651 ("Even if [the defendant's] contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year pro bono association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the imposition of general personal jurisdiction over [him].")); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir. 1990) (holding that sporadic contacts with Louisiana were insufficient to cause

Furthermore, in *Access Telecom*, the Fifth Circuit emphasized that, in order to confer general jurisdiction, a nonresident defendant must have a business presence *in* the forum state; it is not enough that the nonresident defendant does business *with* the forum state.[75]

Against that jurisprudential backdrop, the undersigned does not hesitate to find that PTC Brasil's contacts with Louisiana cannot support the existence of general jurisdiction. PTC Brasil is a Brazilian LLC; it does not maintain a place of business in Louisiana; is not licensed or authorized to do, and does not conduct, business in Louisiana; has no registered agent for service of process in Louisiana; does not own or lease any property in Louisiana; does not have any employees in, or who are residents or domiciliaries of, Louisiana; does not hold any Louisiana licenses or permits; and does not maintain a bank account in Louisiana.[76] Vanoil has clearly failed to make a prima facie showing of general jurisdiction over PTC Brasil.

## IV.    THE REQUESTED DISCOVERY IS NOT LIKELY TO LEAD TO A FINDING OF GENERAL JURISDICTION

Within Vanoil's opposition to the instant motion to dismiss, it has asked that this Court grant a ninety (90) day continuance to allow "ample opportunity to

---

the defendant to reasonably anticipate the possibility of being haled into court in Louisiana); *Bearry*, 818 F.2d at 373–76 (holding that the sale of over $250 million of products to seventeen Texas customers over a five year period did not constitute systematic and continuous contacts with Texas because delivery was accepted in Kansas)).

[75] *Johnston*, 523 F.3d at 610 (citing *Access Telecom*, 197 F.3d at 717).

[76] *See generally* Rec. Doc. 9-3, pp. 1-4.

conduct limited discovery to determine the extent of PTC Brasil's contacts with Louisiana and other Louisiana-based companies," in order to support a finding of general jurisdiction.[77] In support of its request, Vanoil states that "PTC Brasil has contracted to do business with, and upon information and belief, has physically visited the businesses of: Tools International Corporation, Johnson Manufacturing, Inc., and Vallourec Tube-Alloy, LLC – all of which are located, or were formally (sic) located, in the Broussard, Louisiana area."[78] Vanoil further states that it "has reason to believe that PTC Brasil may have also conducted/may be conducting regular business with additional unknown oil and gas services/equipment providers in the State of Louisiana[.]"[79] Prior to oral argument, this Court denied the motion to continue, without prejudice to the right to re-urge the request, if necessary, at the time of oral argument.[80]

"As the party opposing dismissal and requesting discovery, the plaintiff[] bear[s] the burden of demonstrating the necessity of discovery."[81] A plaintiff is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)[(2)]

---

[77] Rec. Doc. 11, pp. 5, 11, and 25-26.
[78] *Id*. at p. 25.
[79] *Id*.
[80] Rec. Doc. 18.
[81] *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (quoting *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)).

motion."[82] In this case, even if the requested discovery disclosed what Vanoil alleges it would, such evidentiary facts would not support a finding of general jurisdiction under the above-cited Fifth Circuit and Supreme Court case law. Accordingly, Vanoil has failed to show that the requested discovery is warranted. Furthermore, and regardless of PTC Brasil's alleged contacts with other Louisiana entities, the undersigned finds that Vanoil has made a prima facie showing of specific personal jurisdiction, as explained below.

## V.    THIS COURT HAS SPECIFIC JURISDICTION OVER PTC BRASIL

As recognized above, in *Helicopteros*, "[t]he mere purchase of goods from a state, even at regular intervals and in amounts that were not insubstantial, was not enough to warrant the assertion of jurisdiction over a non-resident in a cause of action *unrelated to those purchases*."[83] However, the undersigned is now focused on whether Vanoil has made a prima facie showing of *specific* jurisdiction, *i.e.* when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.[84]

The Fifth Circuit has explained that the analysis of specific jurisdiction may be refined further into a three-part test: "(1) Did the defendant have minimum contacts with the forum state—purposely directing its activities toward the forum

---

[82] *Id*. (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)).
[83] *Johnston*, 523 F.3d at 610 (citing *Helicopteros*, 466 U.S. at 417-18) (emphasis added).
[84] *Felch*, 92 F.3d at 324 (quoting *Wilson*, 20 F.3d at 647).

state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiff[']s cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair?"[85]

As to the first prong, Vanoil has emphasized that, because it is one of only a few worldwide manufacturers of gas lift mandrels, customers generally seek out Vanoil's services, such that it has not and does not pursue customers. In this case, PTC AS initially reached out to Vanoil with the aim of entering into a business relationship with Vanoil, which ultimately inured to the benefit of PTC Brasil. The record reflects that representatives of PTC AS initiated contact and traveled to Vanoil's facilities in Broussard, Louisiana; established a working relationship with Vanoil through at least three trips to Louisiana in 2008 and 2009; and carried that relationship forward, ultimately for the benefit of its later-established subsidiary, PTC Brasil, representatives of which also visited Vanoil's facilities in 2010 and 2016. As a result of these contacts, PTC Brasil issued 24 purchase orders to Vanoil for gas lift mandrels, for which Vanoil issued at least 88 total invoices to PTC Brasil, amounting to over $6.6 million in products sold, payment for which was to be made

---

[85] *Guidry*, 188 F.3d at 625 (citing 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069, at 174 (Supp. 1999) (citing authorities)).

to Vanoil's bank, in Louisiana. Accordingly, the undersigned finds that PTC Brasil has sufficient minimum contacts with Louisiana.

Second, this litigation commenced with Vanoil filing a petition on open account, in Louisiana's 15th Judicial District Court, in Lafayette Parish, seeking to recover the outstanding amount of $1,071,248.02, which is allegedly due and owing as a result of the above-described purchase orders issued by PTC Brasil to Vanoil. Accordingly, and as conceded by PTC Brasil during oral argument, Vanoil's cause of action arises out of PTC Brasil's forum-related contacts.

Having established the first two prongs, the burden shifts to PTC Brasil to show that the exercise of personal jurisdiction is unfair or unreasonable. PTC Brasil argues that "the 'primary concern' is 'the burden on the defendant,'"[86] and further stresses issues of compulsory process and the need to consider the procedural and substantive policies of another nation when a foreign defendant is involved.[87]

As mentioned above, "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[88] In this case, given the nature of the defendant's contacts with the forum which are at issue herein, the undersigned has weighed the above-recited factors and finds that it is neither unreasonable nor unfair

---

[86] Citing *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *World–Wide Volkswagen*, 444 U.S. at 292).

[87] *Johnston*, 523 F.3d at 615; *Asahi Metal Indus. Co. v. Superior Court of Ca.*, 480 U.S. 102, 115 (1987).

[88] *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

to subject PTC Brasil to jurisdiction herein.[89] Although PTC Brasil stresses the burden it will face by being forced to litigate in Louisiana, the undersigned is unpersuaded that said burden is any greater than that which would be on Vanoil were it required to litigate in Brazil. Here, representatives of PTC Brasil traveled to Broussard, Louisiana for both business negotiations and an audit, while representatives of Vanoil have never traveled to or maintained business operations in Brazil, and as referenced above, PTC Brasil agreed at one time, through its 99.999% owner and parent company, to be haled into court in Louisiana. Furthermore, both the plaintiff's and Louisiana's interests are strong, in light of PTC Brasil's purposeful contacts over several years, in developing a business relationship with a Louisiana company that pays taxes in Louisiana, purchasing equipment manufactured in Louisiana, and establishing an open account relationship on which payments were to be made to a Louisiana bank. On balance, Vanoil has made a prima facie showing of specific jurisdiction, and PTC Brasil has failed to show that the exercise thereof would be unfair.

## CONCLUSION

For the foregoing reasons, this Court recommends that the motion to dismiss for lack of personal jurisdiction (Rec. Doc. 9) be DENIED, as the undersigned finds

---

[89] *See* footnote 55, *supra,* citing *Electrosource*, 176 F.3d at 874 (quoting *Wilson*, 20 F.3d at 647 n. 3 (internal citations and quotation marks omitted)).

that Vanoil has made a prima facie showing of specific personal jurisdiction over PTC Brasil.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[90]

Signed in Lafayette, Louisiana on September 28, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[90] *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).