UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **VANOIL COMPLETION SYSTEMS, LLC** | **CASE NO. 6:18-CV-00412** |
| **VERSUS** | **DISTRICT JUDGE SUMMERHAYS** |
| **PTC DO BRASIL TECNOLOGIA EM PETROLEO LTDA** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Pending before the Court is a Motion for Issuance of a Permanent Anti-Suit Injunction [ECF No. 53] filed by plaintiff Vanoil Completion Systems, LLC ("Vanoil"). PTC Do Brasil Tecnologia Em Petroleo LTDA ("PTC Brasil") has filed an opposition. [ECF No. 64] For the following reasons, the motion is DENIED.

### I.
#### BACKGROUND

As described in a previous ruling, this case arises from the sale of gas-lift mandrels by Vanoil to PTC Brasil. [ECF No. 78 at 1] In 2011 and 2016, PTC Brasil submitted several purchase orders for gas-lift mandrels manufactured by Vanoil, of which PTC Brasil took delivery. [*Id.*] PTC Brasil accepted the last shipment of mandrels on May 10, 2016. [*Id.*] In May and July 2016, PTC Brasil notified Vanoil that two of the mandrels delivered in 2012 had manifested potential manufacturing defects. [*Id.*] PTC Brasil then refused to pay the outstanding amounts owed for all the mandrels that had been delivered, refused to return them, placed them in "quarantine," and began extensive testing on all Vanoil-produced mandrels. [*Id.*]

On February 9, 2018, Vanoil filed a Petition on Open Account in the 15th Judicial District Court for the Parish of Lafayette, seeking payment of the outstanding balance for mandrels ordered

between March and June 2016. [ECF No. 78 at 2] On March 9, 2018, Vanoil amended its petition. [*Id.*] PTC Brasil filed a Notice of Removal to this Court on March 26, 2018. [*Id.*] On November 2, 2018, PTC Brasil filed an Answer and Counterclaim, asserting claims including "redhibition, misrepresentation, breach of warranties and breach of contract" based on alleged defects in the manufacture of delivered mandrels. [*Id.*] Vanoil answered PTC Brasil's counterclaim on November 21, 2018. [*Id.*] Vanoil filed a Second Amended and Restated Complaint on November 25, 2019, adding details regarding the history of the parties' business relationship and seeking to add Petroleum Technology Company AS ("PTC Norway") as an additional defendant. [*Id.*]

On or about June 25, 2019, PTC Brasil issued an "Extrajudicial Notification" (the "June 25th Notification") to Vanoil, which Vanoil received on September 12, 2019. [ECF No. 53-1 at 2] The June 25th Notification requested that Vanoil pay $3,900,000.00 to PTC Brasil for damages resulting from defects in purchased mandrels. [ECF No. 53-2] The June 25th Notification further stated that if payment was not made within fifteen (15) business days, PTC Brasil would file suit in Brazil or the United States to recover its damages. [ECF No. 53-2 at 16] There is no allegation that PTC Brasil has filed any claims against Vanoil other than those made in its Answer and Counterclaim in the present case. Vanoil then filed the instant motion for a permanent anti-suit injunction. [ECF No. 53]

## II.
### ANALYSIS

Vanoil seeks a "permanent anti-suit injunction" prohibiting PTC Brasil from instituting or maintaining in any jurisdiction other than the Western District of Louisiana any additional lawsuit or action against Vanoil arising from the sales of mandrels that form the basis of the claims and counterclaims made in this suit. [ECF No. 53-1 at 3] Vanoil does not request a temporary restraining order or preliminary injunction, nor does it request a hearing to argue a preliminary

injunction. Vanoil argues that PTC Brasil intends to bring suit in Brazil but does not allege that any action has been commenced. [ECF No. 53-1 at 3] Vanoil quotes from the June 25th Notification as serving "for the purpose of giving [Vanoil] notice that [PTC Brasil] intends to file a lawsuit against Vanoil in Brazil," and the fact that this notification was served after PTC Brasil filed its counterclaim, as evidence that PTC Brasil intends to bring suit in Brazil. [ECF No. 53-1 at 2-3]

PTC Brasil counters that Vanoil's request should be interpreted as a request for preliminary, not permanent, injunctive relief in keeping with the caselaw on foreign anti-suit injunctions; it argues that Vanoil has not satisfied the stringent standards for an anti-suit injunction. [ECF No. 64 at 16] PTC Brasil argues alternatively that Vanoil must be ordered to post security under Federal Rule of Civil Procedure 65(c) if injunctive relief is granted. [*Id.*]

A foreign anti-suit injunction is a "particular subspecies of preliminary injunction." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003). It is an extraordinary remedy and should be treated as the exception rather than the rule. *Id.* at 363-64. Unlike a traditional preliminary injunction,[1] a foreign anti-suit injunction "ultimately depends on considerations unique" to that type of injunction. *Id.* at 364. Specifically, a court must weigh the domestic needs to prevent vexatious or oppressive litigation and protect its own jurisdiction against the need to defer to principles of international comity. *Id.* at 366 (citing *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996), *MacPhail v. Oceaneering Int'l, Inc.*, 302 F.3d 274, 277 (5th Cir. 2002)). The "domestic judicial interests" aspect of this standard

---

[1] The requirements that must be met to impose a traditional preliminary injunction are: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Karaha Bodas,* 335 F.3d at 363 (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974)).

requires a court to first consider whether the foreign litigation would be "vexatious or oppressive." *Karaha Bodas*, 335 F.3d at 366. In other words, would the foreign proceeding cause "inequitable hardship," frustrate or delay "the speedy and efficient determination of the [domestic] cause," and otherwise duplicate the parties and claims of the domestic litigation. *Id.* A court should also consider whether an injunction is necessary to protect the court's jurisdiction. *Id.* Considerations of comity dictate against injunctive relief when a case "implicates international issues and when prior steps in resolving a dispute have taken place in international fora." *Id.* at 371 (citations omitted). Comity, however, does not dominate the analysis. *Id.* at 366.

Vanoil relies primarily on the Fifth Circuit's decision in *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996), where the circuit affirmed the use of a foreign anti-suit injunction in a case involving duplicative claims arising out of a contract dispute. In that case, Kaepa, Inc. (a United States company) and Achilles Corp. (a Japanese company) entered into a contract granting Achilles an exclusive right to market Kaepa shoes in Japan. 76 F.3d at 625-26. The contract provided that Texas law would govern interpretation of the contract and that Achilles consented to jurisdiction in Texas courts. *Id.* Kaepa later sued Achilles in Texas state court, alleging fraud, negligent misrepresentation, and breach of contract. The case was removed to federal court and discovery ensued. *Id.* Seven months later, and well into an extensive discovery process, Achilles sued Kaepa in Japan. *Id.* Achilles' Japanese action asserted the same claims against Kaepa that Kaepa asserted against Achilles in Texas. *Id.* The district court enjoined the Japanese action. *Id.* The Fifth Circuit affirmed the district court's injunction, concluding that comity did not weigh against the injunction because the litigants were private parties who asserted claims arising out of a private contractual relationship. *Id.* at 627. The record also showed that the suit was "long and firmly ensconced" in the United States judicial system. *Id.* at 627. The court ultimately concluded

that the duplication, expense, and effort required to litigate two simultaneous, "mirror-image" suits would be sufficiently vexatious and oppressive to warrant an anti-suit injunction. *Id.*

Considerations of international comity do not preclude the relief requested by Vanoil. As in *Kaepa* and *MacPhail*, the parties in this case are private entities who entered into private transactions that do not implicate international governmental or public matters. Unlike *Karaha Bodas*, neither party is a government entity. PTC Brasil argues that an injunction by this Court would undermine comity by indicating a lack of trust or confidence in Brazilian courts. [ECF No. 64 at 16] Under Fifth Circuit precedent, however, the international comity factor turns on the nature of the parties and the dispute, and whether the case implicates international interests. Because a putative suit by PTC Brasil would concern two private companies and private transactions, considerations of international comity would not preclude an anti-suit injunction.

The "domestic judicial interest" factors, however, weigh against injunctive relief in this case based on the current record. Unlike *Kaepa*, Vanoil seeks *preemptive* injunctive relief based on PTC Brasil's June 25th Notification. In *Kaepa*, the foreign proceeding had already been filed and the district court was able to apply the domestic interest factors based on the claims and allegations actually asserted in that proceeding. The *Kaepa* court could thus judge whether the claims in that ongoing litigation involved duplicative, "mirror-image" claims in the context of an actual pending foreign action. Here, other than the generally worded June 25th Notice, the record reflects no pending foreign proceeding. Vanoil argues that the June 25th Notice indicates that PTC Brasil intends to commence a foreign proceeding asserting claims that are mandatory counterclaims in the present case. The Fifth Circuit has not expressly addressed the use of anti-suit injunctions prohibiting foreign actions that assert claims that would be mandatory counterclaims in a prior pending action in the United States. However, in *Sindhi v. Raina*, No.

3:15-CV-3229-D, 2018 WL 1964198, at *2 (N.D. Tex. Apr. 26, 2018), the district court adopted the Ninth Circuit's rule that "where a party seeks to litigate a compulsory counterclaim in a foreign country, and where the pursuit of such litigation could result in inconsistent rulings and the likelihood of unnecessary delay, substantial inconvenience and expense, the district court has the discretion to enter an injunction against the foreign proceeding." *Id.* at *2 (quoting *Butte Min. PLC v. Smith*, 24 F.3d 245 (9th Cir. 1994)). However, in *Sindhi*, like *Kaepa*, the district court applied this rule to a pending foreign proceeding. The court examined the claims and factual allegations asserted in the foreign proceeding and concluded that claims asserted in India would be mandatory counterclaims in the case pending in the Northern District of Texas because the claims arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* (citing Rule 13(a) of the Federal Rules of Civil Procedure). According to the *Sindhi* court:

> [T]he bulk of the claims pertaining to Raina in the India lawsuit are logically related to the claims in the [U.S.] suit. The defamation claims by Raina against Sindhi relate to the same factual allegations underlying the [U.S.] suit: that Raina stole bulletlink.com CMS source code, trade secrets, and other confidential information to create a substantially similar competing CMS. The alleged defamatory nature of Sindhi's communications with clients regarding the [U.S.] suit and the court's orders rests ultimately on the veracity of the same factual allegations made in the [U.S.] suit.

*Id.* at *3 (footnotes omitted). The district court's reasoning in *Sindhi* is persuasive but the Court cannot make the same determination with respect to the preemptive relief requested in the present case.

Vanoil cites two cases to support the award of a preemptive anti-suit injunction: *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002) and *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946 (D. Minn. 1981). Both cases are distinguishable. In *Newby*, securities fraud cases arising out of the Enron collapse were transferred by the Judicial Panel on Multidistrict Litigation

to the Southern District of Texas, and the presiding judge in the Southern District entered an order addressing discovery management and the preservation of certain identified documents. 302 F.3d at 299. A Texas law firm proceeded to file multiple individual securities actions in Texas state court that did not meet the threshold for removal to federal court under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f). *Id.* The law firm also obtained an injunction in state court with respect to the same documents and discovery that were the subject of the district court's order in the *Newby* MDL. *Id.* at 299-300. The district court granted an injunction barring future filings. But the court issued this injunction after multiple state court actions had been commenced to evade SLUSA and the law firm at issue had obtained a state court injunction that interfered with the district court's discovery orders. *Id.* at 302-03. This is not the case here. No foreign proceedings have been filed and the June 25th Notice provides little basis for applying the "domestic judicial interest" factors. *Medtronic, Inc.* similarly does not support the relief requested by Vanoil. Like *Newby*, the district court in *Medtronic, Inc.* entered an injunction prohibiting future proceedings but only after multiple foreign proceedings had already been commenced.

     In sum, a foreign anti-suit injunction is an extraordinary remedy and requires careful application of the "domestic judicial interest" factors set forth in *Kaepa* and *Karaha Bodas*. The Court cannot make this determination on the present record based on the June 25th Notice. This does not mean that the "domestic judicial interest" factors can never be satisfied before a foreign proceeding is actually commenced. A request for prospective, preemptive injunctive relief may satisfy these requirements with the appropriate record. The record here, however, does not support injunctive relief. Accordingly, the Court denies Vanoil's request for an anti-suit injunction. But it will deny this relief without prejudice. Vanoil may re-urge its request for injunctive relief if PTC

Brasil files a proceeding in Brazil or a change in circumstances otherwise supports issuance of an anti-suit injunction.

## III.
### CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that the Motion for Issuance of a Permanent Anti-Suit Injunction [ECF No. 53] is DENIED without prejudice.

THUS DONE AND SIGNED in Chambers on this 20th day of November, 2020.

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**