**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **VANOIL COMPLETION SYSTEMS, LLC** | **CASE NO. 6:18-CV-00412** |
| **VERSUS** | **DISTRICT JUDGE SUMMERHAYS** |
| **PTC DO BRASIL TECNOLOGIA EM PETROLEO LTDA** | **MAGISTRATE JUDGE HANNA** |

**MEMORANDUM RULING**

The present matter before the Court is a Motion In Limine To Exclude Evidence From PTC Do Brasil Tecnologia Em Petroleo LTDA's Expert And From Its Expert's Report, And/Or Alternatively, Motion For Adverse Inference Instruction On The Grounds of Spoliation [ECF No. 54] filed by plaintiff Vanoil Completion Systems, LLC ("Vanoil"). PTC Do Brasil Tecnologia Em Petroleo LTDA ("PTC Brasil") has filed an opposition. [ECF No. 63] For the following reasons, the motion is DENIED.

**I.**
**BACKGROUND**

The facts giving rise to this suit are not disputed. In January 2011, PTC Brasil ordered eight chemical injection mandrels from Vanoil, and took delivery of the mandrels in June 2012 (the "2012 mandrels"). [ECF No. 54-1 at 2] Between March and June 2016, PTC Brasil ordered additional mandrels, and took delivery of them in April and May 2016 (the "2016 mandrels"). [*Id.*] Certain of the 2012 and 2016 mandrels were subsequently sold by PTC Brasil to Petrobras, and one of these mandrels was installed on an offshore well designated "JUB-45" (the "JUB-45 mandrel"). [ECF No. 63 at 15] In May 2016, the JUB-45 mandrel failed. [*Id.*] PTC Brasil notified

Vanoil of the failure, placed the remaining Vanoil mandrels in "quarantine," and began extensive testing on all Vanoil-produced mandrels. [ECF No. 78 at 1] PTC Brasil also refused to pay the outstanding amounts owed for all the mandrels that had been delivered. [*Id.*] Petrobras conducted its own failure analysis on the JUB-45 mandrel and issued a report on its failure analysis in December 2016. [ECF No. 54-8]

On February 9, 2018, Vanoil filed a Petition on Open Account in the 15th Judicial District Court for the Parish of Lafayette, seeking payment of the unpaid balance for mandrels ordered between March and June 2016. [ECF No. 78 at 2] On March 9, 2018, Vanoil amended its petition. [*Id.*] PTC Brasil filed a Notice of Removal to this Court on March 26, 2018. [*Id.*] On November 2, 2018, PTC Brasil filed an Answer and Counterclaim, asserting claims including "redhibition, misrepresentation, breach of warranties and breach of contract" based on alleged defects in the manufacture of delivered mandrels. [*Id.*] Vanoil answered PTC Brasil's counterclaim on November 21, 2018. [*Id.*] Vanoil filed a Second Amended and Restated Complaint on November 25, 2019, adding details regarding the history of the parties' business relationship and seeking to add Petroleum Technology Company AS ("PTC Norway") as an additional defendant. [*Id.*]

On November 19, 2019, Rashmi Bhavsar, P.E., issued an expert report in this litigation on behalf of PTC Brasil. This report indicates that Mr. Bhavasar intends to provide an expert opinion "regarding the chemical injection mandrel manufactured by Vanoil that failed in a Petrobras well, particularly as this relates to the mandrels manufactured by Vanoil for PTC Brasil during the same period to be used for Petrobras, a customer of PTC Brasil." [ECF No. 54-7 at 3] Vanoil has filed the instant motion seeking to exclude Mr. Bhavsar's testimony and report from evidence. [ECF No. 54-1 at 9]

# III.
## ANALYSIS

### A. The Parties' Positions.

Vanoil's motion does not dispute any specific conclusion, opinion, or methodology with respect to PTC Brasil's expert report. [ECF No. 54-1 at 4] Rather, Vanoil requests that the Court exclude Mr. Bhavsar's expert testimony and report on the grounds of spoliation of evidence. [ECF No. 54-1 at 5] Specifically, Vanoil alleges that in the course of analyzing the JUB-45 mandrel after its failure, PTC Brasil and/or Petrobras cut the mandrel into multiple pieces. Vanoil contends that these actions constitute spoliation, and that they denied Vanoil the opportunity to perform its own testing or analysis on the complete mandrel.[1] [ECF No. 54-1 at 5-6] Vanoil therefore requests (1) that Mr. Bhavsar's testimony and report be excluded from evidence, (2) alternatively, that the Court assume that testing by Vanoil would have revealed evidence unfavorable to PTC Brasil, and (3) that Vanoil be allowed to present evidence at trial related to intentional destruction of relevant evidence.[2] [ECF No. 54-1 at 7-9]

PTC Brasil argues that the motion should be denied because: (1) a motion *in limine* is inappropriate in a bench trial and Vanoil's motion is therefore "moot"; (2) the expert report

---

[1] Vanoil argues that spoliation is also implicated by PTC Brasil's failure to produce the JUB-45 mandrel and other allegedly defective mandrels in response to Vanoil's discovery requests. [ECF No. 54-1 at 5] As noted below, spoliation involves the bad faith destruction of evidence which a party had an obligation to preserve. Vanoil's allegation that PTC Brasil failed to produce evidence in the course of discovery is the subject of a separate line of motion practice. [*See* ECF Nos. 44, 72, 73]

[2] Vanoil in fact requests that an adverse inference instruction be issued to the jury, and that Vanoil be allowed to present evidence to the jury regarding intentional destruction of relevant evidence. [ECF No. 54-1 at 8-9] PTC Brasil argues that this case is set for a bench trial rather than a jury trial. [ECF No. 63 at 7] The Court finds no indication in the record that either party has requested a jury trial in this matter. [*See* ECF Nos. 1; 1-1 at 1-4 and 33-36; 27; and 40] The two Scheduling Orders issued in this case have each stated that the case will be tried as a bench trial. [ECF. Nos. 29, 37] (however, the most recent Scheduling Order was vacated on the grounds of a discovery dispute [ECF No. 68]). The Court, therefore, deems Vanoil's motion to be a request directed to the Court as the trier-of-fact rather than to a jury.

attached to Vanoil's motion does not include crucial attachments, so the full document is not before the court;[3] (3) PTC Brasil has offered to allow Vanoil to inspect or analyze any of the mandrels or parts of mandrels in its possession in Brazil; (4) Vanoil has not met its burden of proving the elements of spoliation; and (5) Mr. Bhavsar's report is broader in scope than the JUB-45 mandrel, and contains conclusions that are not dependent of testing or analysis of any particular mandrel. [ECF No. 63]

### B. The Motion in Limine Is Not "Moot".

The purpose of a motion *in limine* is to exclude anticipated prejudicial evidence before the evidence is actually offered. *Luce v. United States*, 469 U.S. 38, 40, 105 S. Ct. 460, 462, 83 L. Ed. 2d 443 (1984). In the Fifth Circuit, motions *in limine* are not improper or moot merely because the matter will be tried to a judge rather than a jury. *See*, *e.g., Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 F. App'x 850 (5th Cir. 2018); *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 642 (5th Cir. 2001); *Kinnerson v. Arena Offshore, LP,* No. CV 16-720, 2019 WL 2571627, at *2 (W.D. La. June 21, 2019) ("the mere fact that a case is being tried as a bench trial does not completely remove the Court's gate-keeping role."). Accordingly, the Court will turn to Vanoil's spoliation argument.

### C. Spoliation.

The matter *sub judice* was removed to federal court on the grounds of diversity of citizenship. [ECF No. 1] Evidentiary issues in diversity matters, including spoliation and presumptions which allow an adverse inference based on unproduced evidence, are governed by federal law rather than state law. *King v. Illinois Cent. R.R.*, 337 F.3d 550, 555–56 (5th Cir. 2003). A party seeking an adverse-inference instruction based on spoliation must prove (1) that the party

---

[3] For the reasons given below, the Court finds that Vanoil's motion fails for reasons unrelated to this argument, and therefore will not address at this stage whether incompleteness of the motion's attachments is determinative.

with control over the evidence had a duty to preserve it at the time of destruction, (2) that the evidence was destroyed with a culpable state of mind, and (3) the destroyed evidence was relevant to the alleging party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, No. 19-31030, 2020 WL 6572583, at *7 (5th Cir. Nov. 6, 2020). A party seeking an adverse inference based on the destruction of potential evidence must show that the party who allegedly destroyed the evidence did so in bad faith. *King*, 337 F.3d at 556. "Bad faith requires destruction for the purpose of depriving the adversary of the evidence." *Coastal Bridge,* 2020 WL at *8.

All of these elements are grounded on the assumption that the evidence at issue was destroyed. Vanoil argues that the JUB-45 mandrel was "destroyed" when the surviving parts of the mandrel were sliced into pieces for testing. [ECF No. 54-1 at 6] PTC Brasil does not dispute that the JUB-45 mandrel was sliced into pieces for testing. However, the record also reflects that the mandrel was initially destroyed when it failed in the well and that some portion of the failed mandrel was lost in the well. Other portions of the mandrel were recovered by its owner, Petrobras, and subjected to destructive testing by Petrobras. PTC Brasil's actions were limited to remediation testing of some portions of the JUB-45 mandrel at Petrobras' request. However, the record suggests that portions of the JUB-45 mandrel still exist in the possession of Petrobras and PTC Brasil, and it is not clear that the subsequent testing of the surviving parts of the mandrel destroyed evidence. To the contrary, Vanoil and PTC Brasil are engaged in a lengthy discovery dispute over access to the remaining parts of the JUB-45 mandrel.

With respect to control, PTC Brasil argues that it did not control the JUB-45 mandrel at the time it was destroyed because the mandrel was owned and controlled by Petrobras at the time of its installation, failure, and *Petrobras'* post-failure testing and analysis of the recovered

mandrel. [ECF No. 63 at 15] PTC Brasil further contends it did not have a duty to preserve the mandrel because it did not anticipate in May 2016 (when the well failed) or December 2016 (when Petrobras completed its analysis) that it would file a counterclaim in November 2018. [ECF No. 63 at 15-16] PTC Brasil contends that it performed tests on certain portions of the JUB-45 mandrel because the mandrel's owner, Petrobras, requested that PTC Brasil formulate a remediation plan for the alleged defects in Vanoil's mandrels. [ECF No. 63 at 17-18; ECF No. 54-7 at 18]

A party has a duty to preserve evidence for spoliation purposes "when the party has notice that the evidence is relevant to [] litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D.Tex.2010)). The point when a duty to preserve evidence is triggered turns on the specific facts and circumstances of the case. *Coastal Bridge*, 2020 WL at *8 (finding that the defendant had a duty to preserve evidence related to the cause of a fire when it received immediate notice of the fire by telephone, received written notice one month later, and counsel for both parties participated in a joint inspection three weeks after written notice); *see also Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F. Supp. 2d 598, 641 (S.D. Tex. 2010) (finding a duty to preserve existed when e-mails among the defendants discussed "the final steps of the plan to sue" the plaintiff and the defendants "knew that they would be suing Rimkus within days"). Whether a duty to preserve evidence exists depends on the specific claims to which the evidence is relevant. *King*, 337 F.3d at 556 (finding no duty to preserve evidence related to a claim based on a malfunctioning railroad signal when the plaintiff's counsel did not inform the defendant of the basis of the claim until three years after giving notice of representation, during which time evidence showed the signal and associated documentation had been disposed as part of routine business).

Here, the record does not reflect that PTC Brasil had control over the surviving pieces of the JUB-45 mandrel when Petrobras performed its own testing of the mandrel. Petrobras' testing involved slicing some or all of the recovered mandrel into pieces for analysis. PTC Brasil arguably only had control over some portions of the JUB-45 mandrel when Petrobras' requested that PTC Brasil determine whether the mandrels could be remediated in December 2016. But the record does not reflect that PTC Brasil had a duty to preserve these portions of the mandrel at the time it took possession in December 2016. Specifically, PTC Brasil took possession of portions of the mandrel to determine whether alleged defects in the mandrels could be remediated and, if so, to develop a process to remediate the other mandrels that were in quarantine. The record contains no evidence suggesting that PTC Brasil anticipated it would ultimately file counterclaims against Vanoil when it conducted this remediation analysis on the JUB-45 mandrel in December 2016.[4]

The Court now turns to the question of bad faith. In order to prove bad faith, a party alleging spoliation "must establish that the defendant intentionally destroyed the evidence for the purpose of depriving opposing parties of its use…[i]t is insufficient to show that a party acted negligently." *Coastal Bridge*, 2020 WL at *8. (emphasis and citations omitted). If the Court finds that a party intentionally destroyed evidence, it may exercise its discretion to impose sanctions on the responsible party. *Id.* at *7. The record simply does not establish that PTC Brasil intentionally destroyed the JUB-45 mandrel. Specifically, the record reflects that (1) the JUB-45 mandrel failed in the well; (2) portions of the mandrel were lost in the well, and the retrieved remains were sliced into parts to be used as samples for post-failure testing by Petrobras (not PTC Brasil); (3) PTC Brasil took possession of portions of the failed mandrel to conduct a remediation analysis; and (4)

---

[4] Because the JUB-45 mandrel was one of the 2012 mandrels, it is not relevant to Vanoil's February 2018 suit for non-payment for the 2016 mandrels. It is only relevant to PTC Brasil's November 2018 counterclaim, which appears to allege that some or all of both the 2012 and 2016 mandrels were defective.

PTC Brasil and Petrobras currently possess portions of the recovered mandrel. At most, the record may show the PTC Brasil intentionally conducted destructive remediation testing on certain mandrel components. But the record does not reveal the extent to which PTC Brasil's intentional acts resulted in the destruction of the salvaged JUB-45 to the point that these actions deprived Vanoil of evidence relevant to any of its claims or defenses.

Even assuming, *arguendo*, that the record supports Vanoil's argument that PTC Brasil intentionally destroyed portions of the JUB-45 mandrel as part of its remediation testing, "bad faith" for purposes of spoliation requires proof that this evidence was destroyed "for the purpose of depriving opposing parties of its use…." *Coastal Bridge*, 2020 WL at *8. Here, the record reflects that PTC Brasil conducted remediation testing on portions of the salvaged JUB-45 mandrel in order to determine whether the quarantined mandrels could be remediated, not to deprive Vanoil or any other party of evidence relevant to the present controversy. In sum, Vanoil has not met its burden of proving all of the elements of a claim for spoliation.

### D. Fairness and Access to the Surviving Parts of the JUB-45 Mandrel.

Finally, Vanoil argues that the testimony and report of PTC Brasil's expert should be excluded because Vanoil has not been allowed access to the surviving JUB-45 mandrel parts that were used in the tests relied on by this expert. This argument tracks the present discovery dispute on appeal from the Magistrate Judge and will not be addressed here.

## IV.
### CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Vanoil's Motion In Limine To Exclude Evidence From PTC Do Brasil Tecnologia Em Petroleo LTDA's Expert And From Its Expert's Report, And/Or Alternatively, Motion For Adverse Inference Instruction On The Grounds of Spoliation [ECF No. 54] is DENIED.

THUS DONE AND SIGNED in Chambers on this 30th day of November, 2020.

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**